PEOPLE v LAWRENCE

Docket No. 67096. Submitted November 2, 1982, at Lansing.—Decided
February 1, 1983.

Walter J. Lawrence was convicted of a traffic violation in Ma-
comb District Court and ordered to pay a fine and costs of $30.
Lawrence alleged that the charges against him should have
been dismissed because the United States Constitution barred
the State of Michigan and the district court from enforcing
payment of the fine except in gold or silver coin of the United
States government, and, because there was no such legal ten-
der, payment was an impossibility. Lawrence's argument was
denied by the district court and he appealed to the Macomb
Circuit Court. The court, James C. Daner, J., affirmed the
district court order. Lawrence filed an application for leave to
appeal with the Court of Appeals. Held:

The order of the circuit court should be affirmed and leave to
appeal denied. The United States Constitution does not require
the State of Michigan to pay its debts or receive payment for
debts exclusively in either gold or silver coin. The state may
not require the payment of private debts exclusively in either
gold or silver coin because Congress alone possesses and exer-
cises that authority.

Affirmed.

1. TENDER — CONSTITUTIONAL LAW — CONGRESS.

The federal government pursuant to the broad powers delegated
to Congress by the United States Constitution possesses the
exclusive power to declare what shall be legal tender for the
payment of all debts (US Const, art I, § 8).

2. TENDER — CURRENCY — CONGRESS.

The separate states cannot declare what shall be money or
regulate its value; whatever power there is over the currency is
vested in Congress.

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 5] 54 Am Jur 2d, Money § 22.
[4] 54 Am Jur 2d, Money §§ 23, 24.

3. TENDER — NATIONAL CURRENCY — CONGRESS.

The United States Congress, in exercising its power to establish and regulate a national currency, has expressly forbidden the making of obligations payable in gold or any particular kind of coin or currency except that which was declared legal tender at the time of payment.

4. TENDER — COINS AND CURRENCIES.

All coins and currencies of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations, regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues (31 USC 392).

5. TENDER — GOLD OR SILVER COIN.

The State of Michigan is not required to pay its debts or receive payments for debts exclusively in either gold or silver coin and the state may not require the payment of private debts exclusively in either gold or silver coin.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George N. Parris,* Prosecuting Attorney, and *Don L. Milbourn,* Chief Appellate Attorney, for the people.

*Walter J. Lawrence, in propria persona,* for defendant on appeal.

Before: WAHLS, P.J., and J. H. GILLIS and V. J. BRENNAN, JJ.

PER CURIAM. In this case we issue an opinion on defendant appellant's application for leave to appeal. See GCR 1963, 806.7.

Defendant Walter J. Lawrence received a traffic ticket on November 16, 1981, in Macomb County. He pled guilty in the 40th District Court on April 21, 1982, and was ordered to pay a fine and costs of $30. Lawrence argued that the court could not compel payment from him in a medium other than gold or silver coin currently in circulation and minted by the United States government. As au-

thority for this position Lawrence relied upon art I, § 10, clause 1 of the United States Constitution.

Lawrence's argument was rejected, and he appealed to Macomb County Circuit Court. That court affirmed the trial court by opinion of August 12, 1982, and order of August 31, 1982. Lawrence has filed this application for leave to appeal from that order.

Lawrence argues that this question is one of first impression in Michigan. It is true that we have not found any reported cases on the question in Michigan, but there is a great body of unanimous law on the question in the reported cases from the federal courts and from other jurisdictions. We agree with those cases. The Attorney General of the State of Michigan issued an opinion, No 5934, on July 15, 1981, on the question which summarizes those cases and concludes that art I, § 10 does not require the State of Michigan to pay its debts or receive the payment for debts exclusively in either gold or silver coin. We agree and adopt that opinion as our own as follows:

"You have requested our opinion whether US Const, art I, § 10, requires the State of Michigan to pay its debts or receive payment for debts exclusively in either gold or silver coin.

"US Const, art I, § 10, in pertinent part, provides:

" 'No State shall * * * make any Thing but gold and silver Coin a Tender in Payments of Debts * * *.' "

"It has long been established that the federal government pursuant to the broad powers delegated to Congress by US Const, art I, § 8, possesses the exclusive power to declare what shall be legal tender for the payment of all debts. Legal tender cases: *Knox v Lee* and *Parker v Davis,* 79 US 457; 20 L Ed 287 (1870); *Julliard v Greenman,* 110 US 421; 4 S Ct 122; 28 L Ed 204 (1884); *Norman v Baltimore & Ohio R Co,* 294 US 240; 55 S Ct 407; 79 L Ed 885 (1935); *Guarantee Trust*

*Co v Henwood,* 307 US 247; 59 S Ct 847; 83 L Ed 372 (1939). The reason for vesting Congress with this power was stated succinctly by the United States Supreme Court in *Knox v Lee, supra:*

" 'The Constitution was intended to frame a government as distinguished from a league or compact, a government supreme in some particulars over States and people. It was designed to provide the same currency, having a uniform legal value in all the States. It was for this reason the power to coin money and regulate its value was conferred upon the Federal government, while the same power as well as the power to emit bills of credit was withdrawn from the States. The States can no longer declare what shall be money, or regulate its value. Whatever power there is over the currency is vested in Congress.' 79 US 457, 545.

"Further explanation was later provided by the Court in *Julliard v Greenman, supra,* as follows:

" 'By the Constitution of the United States, the several States are prohibited from coining money, emitting bills of credit, or making anything but gold and silver coin a tender in payment of debts. But no intention can be inferred from this to deny to Congress either of these powers. Most of the powers granted to Congress are described in the eighth section of the first article; the limitations intended to be set to its powers, so as to exclude certain things which might otherwise be taken to be included in the general grant, are defined in the ninth section; the tenth section is addressed to· the States only.' 110 US 421, 446."

"The Court went on to hold, *inter alia:*

" 'The power of issuing bills of credit, and making them, at the discretion of the legislature, a tender in payment of private debts, had long been exercised in this country by the several Colonies and States; and during the Revolutionary War the States, upon the recommendation of the Congress of the Confederation, had made the bills issued by Congress a legal tender. See *Craig v Missouri,* 4 Pet 435, 453; *Briscoe v Bank of Kentucky,* 11 Pet 257, 313, 334-336; *Legal Tender Cases,*

12 Wall 557, 558, 622; Phillips on American Paper Currency, *passim*. The exercise of this power not being prohibited to Congress by the Constitution, it is included in the power expressly granted to borrow money on credit of the United States.

" 'This position is fortified by the fact that Congress is vested with the exclusive exercise of the analogous power of coining money and regulating the value of domestic and foreign coin, and also with the paramount power of regulating foreign and interstate commerce. Under the power to borrow money on the credit of the United States, and to issue circulating notes for the money borrowed, its power to define the quality and force of those notes as currency is as broad as the like power over a metallic currency under the power to coin money and to regulate the value thereof. Under the two powers, taken together, Congress is authorized to establish a national currency, either in coin or in paper, and to make that currency lawful money for all purposes, as regards the national government or private individuals.' 110 US 421, 447-448.

"In exercising its power to establish and regulate a national currency, Congress has, pursuant to 48 Stat 133 (1933); 31 USC 463, expressly forbidden the making of obligations payable in gold or any particular kind of coin or currency except that which it was declared legal tender at the time of payment:

" '(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision

shall not invalidate any other provision or authority contained in such law.

" '(b) As used in this section, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.' "

"The constitutionality of 31 USC 463, *supra,* was upheld in *Norman v Baltimore & Ohio R Co, supra.*

"Presently, legal tender for the payment of all debts, including taxes, is declared in 79 Stat 255 (1965); 31 USC 392 to be:

" 'All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations), regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues.'

"In recent years the federal courts have, in numerous instances, reaffirmed Congress's constitutional power to declare what is legal tender for payment of all debts, both public and private. *United States v Tissi,* 601 F2d 372, 374 (CA 8, 1979); *United States v Rifen,* 577 F2d 1111, 1112 (CA 8, 1978); *United States v Daly,* 481 F2d 28, 30 (CA 8, 1973), *cert den* 414 US 1064; 94 S Ct 571; 38 L Ed 2d 469 (1973); *United States v Whitesel,* 543 F2d 1176, 1180-1181 (CA 6, 1976); *United States v Schmitz,* 542 F2d 782, 785 (CA 9, 1976), *cert den* 429 US 1105; 97 S Ct 1134; 51 L Ed 2d 556 (1977).

"While the question has never been considered by Michigan appellate courts in reported cases, the exclusivity of Congress' power has been consistently recognized by the State courts which have had occasion to consider the matter: *e.g., Chermack v Bjornson,* 302 Minn 213; 233 NW2d 659, 660-661 (1974), *cert den* 421 US 915; 95 S Ct 1573; 43 L Ed 2d 780 (1975), where the Minnesota Supreme Court ruled that the state was not

required to tender income tax refunds in gold and silver coin; *Radue v Zanaty,* 293 Ala 585; 308 So 2d 242, 244 (1975), where the Alabama Supreme Court held that it was impermissible for a taxpayer to tender payment of income taxes by checks redeemable only in gold or silver coin; *Leitch v State Dep't of Revenue,* 16 Or App 627; 519 P2d 1045, 1046 (1974), in which the Oregon Court of Appeals described as 'frivolous' the taxpayer's contention that transportation taxes could only be collected by the state in gold and silver; *Allen v Craig,* 1 Kan App 2d 301; 564 P2d 552; 556-557 (1977), in which the Kansas Court of Appeals rejected a taxpayer's attempt to pay $4,000 in personal and real property taxes with a check which called for payment in 800 silver dollars, allegedly worth five times as much as federal reserve notes; *Trohimovich v Director of Dep't of Labor,* 21 Wash App 243; 584 P2d 467, 470 (1978), where the Washington Court of Appeals denied an attempt by the owners of a business to make payment of state industrial insurance premiums with checks reflecting the owners' conversion of the total dollars due in gold based on final daily price-fixings of gold on the London Market; and *Middlebrook v Mississippi State Tax Comm,* 387 So 2d 726, 728 (Miss, 1980), where the Mississippi Supreme Court held that federal reserve notes are taxable dollars for purposes of paying state income tax assessments." OAG, 1981-1982, No 5934, p 251 (July 15, 1981).

It is our opinion, therefore, that US Const, art I, § 10 does not require the State of Michigan to pay its debts or receive payment for debts exclusively in either gold or silver coin. It is further our opinion that the state may not require the payment of private debts exclusively in either gold or silver coin since Congress alone possesses and exercises this authority.

The order of August 31, 1982, is affirmed.